We'll begin with Bruce v. Becerra. Counsel would state your appearance and let us know how much time you would like to reserve for rebuttal. Good morning, I'm Brett Robinson for plaintiff appellate Brendan Bruce. I'm in the permission to reserve five minutes for rebuttal. Five minutes. OK, go ahead, please. Thank you. Good morning, Your Honors, and may it please the Court. The record before the Court shows that a deficit of just one point on 184 separated Mr. Bruce from selection into the position he sought. Now, unless the Court has questions concerning any legal authorities raised in the briefing, I will focus my evidence this morning on three aspects of the record that I believe show the material factuality that exists as to whether Mr. Bruce was denied that one point because of his having engaged in preprotected activities. Those three points are as follows. First, Jackson, his supervisor, his former supervisor, excuse me, had motive and opportunity to retaliate against him. Second, the other decision makers involved in the selection process had knowledge of his prior protected activities and the record supports an inference that they had a motive to engage in retaliation. And third, Mr. Bruce was profoundly more qualified than several of the other selectees. That's my first point. Ms. Jackson was found by the EEOC's ALJ to have engaged in a colossal failure to engage in a good faith interactive process, and she nonetheless found herself on this interview and selection panel. Can I ask you about the qualifications? The job description specifically says there's no education requirement for this position, and at least three of the other four candidates also had a J.D. One had an L.M., just like Mr. Bruce, and then the one who wasn't a lawyer had relevant contracting experience in both the public and private sectors. So why does that establish that Mr. Bruce was clearly superior in his qualifications? I think it goes to the quantum of experience, Jessica. The job description does say that education qualifications are not required, but they do say that the contributors were required experience, and the position was an embedded regulatory council. The position involved advising on pending or proposed legislation as well as how to implement existing regulations and legislation. It was very much so a legally intensive position, and the reason why Mr. Bruce's educational components, I'll focus on those first, gave him superior qualifications because they represent additional years of directly relevant experience. A law degree and a Master of Laws, both of those are years of dedication to learning how But they all had at least five years of either work as regulatory council or Office of Compliance and Enforcement experience. So I guess I'm still not seeing why Mr. Bruce is clearly superior. Well, Your Honor, I think it goes to the extent of his direct experience that's directly relevant to the position in question. His prior service to the agency touched on all of these divisions, and his charge charge was specifically focused on the kind of duties that the position was provided to perform, specifically this evaluation of proposed legislation and preparing new implementation of existing policies and regulations, including through that framework that he was notably lauded by a prior supervisor tracking health measures bureau as a great success. So his quantum of directly relevant experience is simply significantly greater. Yes, they all crossed thresholds, and that's why they all were selected for interviews. But Mr. Bruce simply had more relevant experience. And this goes to your race dissemination theory, right? Justice Gilman, it goes to both, I think. And the reason for that is that it suggests that the employer stated reasons for selection are not true because the decision-makers in their affidavits to the EEOC investigators pointed both to the elevated interview scores, and they emphasized that quite heavily, but they also pointed to the quantum of experience that the candidate has had. And I think that the record reflects, and it should be drawn in favor of Mr. Bruce on the notion that his quantum of experience was greater, at least sufficient to call into question at summary judgment, on the assembly judgment standard, the veracity of the employer's proffered legitimacy as a reason for non-selection. How do we think about the fact that a person who was selected is of the same race as Mr. Bruce? How does that show race discrimination? Well, I don't think it really affects the analysis much at all, partly because of Connecticut versus Teal, right? The fact that one member of the protected group is treated more favorably is not a defense to discrimination against Mr. Bruce. And as the trial court correctly noted, there was no written policy... Wait, I'm clear. That argument is that they showed more favorable treatment to Mr. Lawson, an African-American, but then showed discrimination against African-Americans as to Mr. Bruce. Is that your argument? Well, the trial court's analysis, Judge Koh, was focused on the selection of who was going to be subjected to pre-decision background checks. But that was as to both of them, and yet they selected Lawson? That's true. And frankly, Your Honor, while we still stand for the proposition that the race discrimination claim should survive summary judgment, I think really what I'd like to focus the court's attention on more than anything else here today is the retaliation. Can we ask about the reference checks? Were Mr. Bruce's references negative? I don't believe so, Your Honor. Okay. So then why was it discriminatory to ask for the checks? Well, because you have to ask, why was the reference check initiated? And witnesses claimed that there was a policy, but the government was not able to point to any actual written policy about reference checks. And in fact, Mr. Bruce presented to the district court, and I have the citation here of the Court of Wish Court, the policy that said that all candidates before they're offered a decision must be submitted for reference checks. That didn't happen here. Instead, only the two black candidates, more importantly Mr. Bruce, was selected for reference check by the very supervisor who denounced and failed to accommodate him in good faith. And so the inference we have in the court draw from that is that perhaps Ms. Jackson, on this record, was looking for other justification for why Mr. Bruce should not be selected. How do you deal with the fact that Jackson was actually rated in the highest of the three interviewers? I don't... I think that someone in a position of authority seeking to punish someone for their protected activity will typically be smart enough to say the right things and do the right things. And that might include giving somebody an increased score having sat on other panels knowing what the relative rankings might have been as a way to cover up misconduct. Are you just speculating? Is there anything in the record that shows she actually was trying to retaliate against her client? Well, Your Honor, I think the evidence for her motive to retaliate, we don't have any direct evidence, I will concede that. But the evidence is circumstantial and the evidence is substantial. So we have the fact that she was aware, and the record shows, and the court will draw an inference on this, that she was aware of the ongoing oppositional activity that Mr. Bruce was engaged in through his various EEOC complaints. We know that from two facts on the record. First, we know that after the fact, talking with the EEOC investigators, Ms. Jackson accurately summarized portions of the judgment that entered against her on the failure to accommodate claim. That's on the record at Volume 5, page 884. Now, that judgment was never served on Ms. Jackson. The only way she could have known about that was through having served on counsel for the agency that then relayed that information to her. So the fact that some contemporaneous information from the ongoing proceedings was getting through to Ms. Jackson supports an inference that more was getting through to her. Including, for example, in the agency, in trying to negotiate contemporaneously with the interview process, trying to negotiate with Mr. Bruce to get him out of the agency voluntarily, and notably, pushed back on his request when he's resignated, he'd place an adjacent candidate that did not have Ms. Jackson or her supervisor in Ms. Jackson's office. But that doesn't sound like evidence to support your claim that she was just perfectly calibrating her score to be higher than her score for the other three candidates and yet low enough that he would still end up being one point below everybody. Where's the evidence of that? Other than speculation. It's not speculation, Your Honor. It's a cumulative and circumstantial evidence. And I'll go through the rest of it as well because it's, you know, the political phrase is when there's smoke, maybe there's fire. And there's an awful lot of smoke on this record, Your Honor. So Ms. Jackson had knowledge of contemporaneous EEOs, protected activities. She led and scored his interview. So through the scoring, she had directed her thumb, potentially at least, on the scale of what the outcomes might be for all four of the positions that were hired into. She also had apparently the authority to independently order an ad hoc background check for people that wasn't specified in the policies for the department. And finally, one of the decision makers for DPO was her direct subordinate. So which one is your stronger claim? Retaliation, Your Honor. Race or retaliation? I apologize for not letting you finish, Your Honor. Retaliation, we believe is the stronger claim. Okay, what do you think is your weakness in your race claim? I think it's the question you first asked, Your Honor. It's, well, I think the record is sufficient to establish superior qualifications. I think it's, it requires a hard look at the actual evidence of those qualifications. But it is supported by the incredibly close difference between Mr. Bruce's score, which many of the witnesses said was dispositive. Ms. Ferris-Clark specifically said she thought, oh, excuse me, she thought the two witnesses, or I'm sorry, the two candidates between him and Mr. Lawson were almost identical. And so she chose based on score. And that's the one point difference off of interview questions that were very generally framed. They were not directed to the specific duties of this position. But again, I think the retaliation claim, and I just realized I've gone quite grossly over my intention to reserve time, but I'll just finish by noting this. We have five different actors in the decision-making panel who all had knowledge of protected activities, and including one, Mr. Hilbert, who specifically noted in his interview notes that he was aware of the allegation that Mr. Bruce had been unlawfully removed, was aware that he'd been accused of being AWOL, had been complained of being subjected to harassment, and made a specific note to look. We have an interview decision-maker who made a note to look into protected activity. Now, there's no legitimate reason for somebody making a hiring decision to ever look further into protected activities. And that is the closest that we can get here, in this case, I think, to direct evidence supporting an inference of discriminatory animus. And I think on the record here, given the involvement of Ms. Jackson, given these four decision-makers, all of whom were aware of protected activities, and given the incredibly close comparison between Mr. Bruce, who we contend was superiorly qualified, but who nonetheless was not selected based off a one-point distinction that one decision-maker in particular said was this positive. Given those facts, we respectfully submit that the trial court, the district court, erred in granting summary judgment in favor of the agency. We think material, factual issue exists here, at least as the pretext and causation, certainly in the retaliation claims, it supports these claims going to a jury to weigh all this competing and disputed information regarding pretext and causation, and we'd ask the court to reverse. Thank you. All right, thank you. It please the court, Michael Garib, an assistant U.S. attorney here today with the appellee. The district court on this record got it right and it should be affirmed. I'm going to start with what I think is the easy claim, which is the race discrimination claim. I think that's an easy call. Then I'll talk about the retaliation claim, which I think is a closer call, but still should result in an affirmance. Why do you think the retaliation claim is a closer call? Because Ms. Jackson was a panel member, and she did have a finding from a previous case that she didn't engage sufficiently in the interactive process. Why isn't that enough to survive summary judgment? That fact alone? Because she gave him the highest score of all the panelists, she wasn't the decision maker, and the unrebuttable... Wait, how is she not the decision maker? Her score went into the composite score that determined who got the job. So how is she not a decision maker? She didn't make the final selection. It was another person who made the selection between the appellant and Mr. Lawson. But that was on the basis of the score to which Ms. Jackson contributed, correct? I'm sorry. I apologize for talking over your honor. The score was part of it, yes, but not the entire data that was in front of the decision maker. So the score was... There were three scores totaled. The unrebutted testimony is there was no collusion among the panel members. There was no discussion. The scores all stood on their own. That was part of the analysis that the decision maker, Ms. Ferris-Clark, made. So now you're saying there are all these other soft factors beyond the scores that were used to make the hiring decision. Is that right? Ms. Ferris... What are these other soft factors? And they don't include the fact that this person filed so many complaints against the agency that he was seeking to get a promotion from? The unrebutted testimony from the decision makers is that these prior complaints had nothing to do with the process. But what were the other factors? You're saying,  we didn't base the decision just on the scores. What else did you base it on then? And what's in the record to support that there were all these other soft factors? I believe that the decision maker, Ms. Ferris-Clark, submitted an affidavit where she talked about the score and also the relevant work history and experience, especially, I think, in contracting in that particular area was a factor for her. She said that both of these candidates were qualified. It was a close call. But if it's a close call, then there are not profound or significant differences here. That's probably all the more reason why the actual score on the interview made the difference because he was the lowest only by one point. True, but the record shows that Ms. Jackson gave him the highest score. So, I heard today the theory that,  she was trying to cover things up and so she purposely gave him, I think the theory is now a high score to cover up her intent to actually retaliate against him. I think that is not supported by the record. That's speculation. Let's go to Mr. Hilbert. Okay, he submits a declaration or an affidavit under penalty of perjury quote, I was specific I was not specifically aware of his disability or his prior EEO activity end quote. That's talking about Mr. Bruce and then yet on his interview questions he says quote, deal with AWOL and harassment dash look. Okay. AWOL being why he was terminated because you wanted him to come in and he didn't but the harassment so, I guess how do you square that? So, I want to talk about that. Thank you, Your Honor. If you look at the  that's at ER 634 according to my notes though what he's writing about the AWOL and look that's he's reporting what the plaintiff the appellant told him in the interview. So, those are the words as I read those notes those are the words coming directly from the appellant here. Those aren't Mr. Hilbert's words or understanding. He didn't he was told apparently in the interview according to his notes he's reporting what Regardless of who the source is why isn't that awareness of the disability or prior EEO activity? He submitted an affidavit saying that he had no specific knowledge other than what the appellant told him apparently in the interview. He had non-specific knowledge. I don't think he ever investigated it. There's certainly no evidence that he ever investigated or looked into it. I'll put it that way in the record. But he was aware of the issue and he made a note to himself to look into it. Well, I'm not sure he did. He reported that plaintiff said look that's how I read it. The trouble is because this was summary judgment you have to look at any inferences more in favor of the non-movement. Again, let's assume Mr. Hilbert had knowledge. Still, does that mean that his decision was a but for reason for his decision? I don't think so. Why is that a jury question? Because it doesn't as I understand the law following Nassar it doesn't matter if it was a factor. It could even be a motivating factor and that's not enough. It has to be the but for cause. But why isn't there a  material factual dispute as to but for causation? Because there's no opportunity to develop evidence below take deposition of these folks. That was not done. That's not in the record ever presented to the district court. Why is it that the agency allowed Ms. Jackson to even be one of the three interviewers where nine months before an ALJ had found that she had discriminated against Bruce? Excellent question Your Honor. If they had made a different panel decision we might not have been here. Ms. Farris Clark was off that day and so Ms. Jackson served on that panel giving the highest score and the decision that was ultimately made here. I noted that ALJ had ordered the agency to provide four hours of training to agency officials who had discriminated against Bruce including Michelle Jackson and that the agency should consider disciplining Jackson. That's in the record, right?  from July of the year before.  before, yes, Your Honor. And yet to have this woman then be one of the interviewers for this promotion that Mr. Bruce was asked to  is a but-for test. Is that your best argument on the retaliation claim, but-for causation? I think it's the  argument. Even if you get past that, there is also the fact that these decisions were made for nondiscriminatory reasons similar to the race claim. The district court never took that issue up, but I think you could affirm on that issue as well. What do you make of the fact that Mr. Hilbert, who was one of the other interviewers, ranked Mr. Bruce the lowest of all the five interviewers. He gave someone else a 47, didn't he? Not 47. We couldn't give him a 47 because 45 is the max. I believe Mr. Hilbert was 34. I believe that was a good score. Not the highest, obviously, but a very good score. Again, from what I understand the theory is now, had he given him a perfect score, that would still be evidence of retaliation in appellant's mind because he's trying to cover his tracks, so to  I don't think there's anything in the  that would be non-race discrimination. That's your second best argument on the retaliation claim? Is that what you just said? I'm sorry. Let me try to  To reverse on retaliation I think you have to find sufficient evidence of not for retaliation here. But I think you also have to say that there was on this record evidence that the reasons for the hire were pretextual. I think you still have to make that analysis on the retaliation claim. It has nothing to do with race discrimination. It's not to be  We need to have a trial. I don't know if I need to go back to the race issue, but I'll just say there is no profound difference sufficient to reverse on that issue. The idea that one candidate has a J.D. from one school and another candidate has a J.D. from a different school or one candidate has a 3.8 GPA and another candidate has a 3.7 GPA. I don't think the courts weighed into that level of  in trying to  whether race was a  All these folks were qualified.  had nothing to do with it. The  court clearly got that issue right. What do you make of the fact that  who was black was himself one of the selected people. Does that wipe out any race claim or not? The district court didn't think so. I'm not sure how you can say appellant was  differently because of his race when a person of his same race was selected over him. I'm not sure how to  that circle. Is there any case you can cite that answers that question one way or the other? I don't have a case in front of me. I'm sorry about that issue. It may not exist. Maybe not.  last thing I'll say is the reason the  court was granted is because of this temporal argument. The argument that  is advancing is different from the district court. If you read the appellant's summary judgment opposition below, what the court was ruling on in front of it, let's see if I have a site for you, 851 ER. The  advanced was nine months prior Ms. Jackson and these other folks were found to have done something wrong or talked to  counsel about this prior issue and so nine months later they retaliated against her. The district court correctly ruled that break in time is sufficient to break the causal chain. There are other cases that say that basically a break of just a few months is sufficient. That's what the district court correctly got right and I would just submit with my last minute that sending it back to the district court and saying you got it wrong for an argument that the plaintiff appellant never presented to you seems unfair. Of course this court has discretion to  any argument not  below but I would submit you can even avoid the whole issue by saying plaintiff appellant never raised this in front of the district court. I don't have any further questions. Let me see if my colleagues do.  not. No. All right. Thank you.   And every counsel is welcome not to use your full time. I don't think today will be that day,  Thank you. Maybe it should be. Go ahead. I understand. My friend suggested that the notes that Mr. Hilbert wrote down were actually dictations of what Mr. Bruce said during his interview. If that was true then all of the decision makers had knowledge and you still have to ask why look if he's just volunteering this information and appropriately we shouldn't consider it. Why look and why make a note of it? And also why did nobody else note this? So I think that's speculation. I don't think that's actually evidence in the record on that but instead she was allowed to retain a position of power and then placed directly in a position of power over Mr. Bruce where other people in the agency saw that that was the outcome and they knew about the prior oppositional activity so they knew that she had been  by Mr. Bruce to not challenge Ms. Jackson by advancing a candidate that she would take as a personal challenge to her authority and she had been allowed to retain that  despite what ALJ said was a gigantic failure. So the record here supports an inference in that direction. Judge Coe, you referenced the soft facts. I just want to  that Ms. Ferris-Clark specifically in her statements to the EEOC investigators in talking about Mr. Lawson and why she chose him she first said that they were the same she said I preferred Mr. Lawson because he had as I recall the quote is relative diverse experience meaning she preferred the person with less experience the person with less experience why would you want that unless the person with more experience was tainted somehow perhaps by oppositional activities in short we'll take just a few seconds for counsel in the to
judges: Gilman, GOULD, KOH